UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CONSTRAFOR, INC.,

Plaintiff,

-against-

FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver for Signature Bank,

Defendant.

24-CV-4402 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

Plaintiff Constrafor Inc. filed this action against the Federal Deposit Insurance Corporation, as Receiver for Signature Bank, alleging that the bank improperly withheld funds belonging to it. In 2022, under an agreement between Constrafor and a third party, the third party received funds owed to Constrafor in its account at Signature Bank. Constrafor never received those funds because Signature Bank blocked the third party's payment to Constrafor. Separately, that same year, Constrafor wired funds to the same third-party's account at Signature Bank. That transaction was canceled, and those funds were supposed to be returned to Constrafor. The third party accidentally initiated a duplicate return which led Constrafor to remit the purchase amount back to the third party a second time. Although Plaintiff's wires into the Signature Bank account were successful, neither of the attempted returns were. Constrafor has repeatedly attempted to recoup its funds from the Signature Bank account both before and after the bank went into receivership, but has been unsuccessful. As a result, Constrafor brings this action, asserting claims for money had and received and conversion. On October 23, 2024, Defendant moved to dismiss Plaintiff's claims in their entirety. As set forth in more detail below, Defendant's motion to dismiss is GRANTED in part and DENIED in part, and Plaintiff's motion for leave to amend is DENIED as futile.

**FACTUAL BACKGROUND**

The following facts are, unless otherwise noted, taken from the Complaint[1] and presumed to be true for the purposes of this motion. *See LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).

On April 26, 2022, Plaintiff Constrafor Inc. ("Constrafor" or "Plaintiff") entered a Subcontractor Receivables Purchase Agreement ("SRPA") with StructureTech New York, Inc. ("STNY"). ¶ 7. Pursuant to the SRPA, Constrafor agreed to purchase invoices issued by STNY to third-party debtors. ¶ 8. The Agreement further obligated STNY to act as Constrafor's agent for the collection of purchased receivables and designated STNY as Constrafor's attorney-in-fact to demand, take, collect, sue for, and receive all payments made concerning the purchased receivables. ¶¶ 11–12. The Agreement also required STNY to hold payments received from account debtors in trust for Constrafor and to remit these amounts to Constrafor within two business days of receipt. ¶ 13.

Around June 16, 2022, STNY, acting as Plaintiff's collection agent and trustee under the SRPA, received a $523,012.71 deposit from Leeding Builders Group LLC (the "Leeding Deposit") into its account at Signature Bank. ¶ 9. The Leeding Deposit was made pursuant to an invoice STNY issued and sold to Constrafor under the SRPA. ¶ 10. As such, the deposit should have been remitted to Plaintiff under the SRPA. However, the funds were withheld by Signature Bank. ¶¶ 14–15.

Around July 14, 2022, Plaintiff remitted $880,660.72 by wire to STNY's account at Signature Bank for the purchase of an invoice STNY had issued to Lions Group II LLC. ¶¶ 16–17. On July 15, 2022, Plaintiff canceled the invoice purchase due to discrepancies identified in

[1] All ¶ references herein refer to the Complaint at ECF No. 1 unless otherwise noted.

the transaction and initiated a return of the funds by STNY. ¶¶ 18–19. Two days later, on July 17, 2022, STNY erroneously initiated a second and duplicate return of $880,660.72. ¶ 19. To fix the duplicate transaction, Plaintiff wired STNY $880,660.72, which was deposited into STNY's account at Signature Bank. ¶ 20.

Neither the first nor second return wires were processed by Signature Bank, and they were never received by Constrafor. ¶ 21. To rectify the issue, on July 20, 2025, STNY attempted to return $1,761,321.44 (the "Lions Group Funds," together with the Leeding Deposit, the "Subject Funds") to Constrafor by executing a Funds Transfer Request. ¶ 22. The transfer was unsuccessful, however, because it was blocked by Signature Bank, which seized the funds. ¶ 23. In total, Signature Bank has held $2,284,334.15 in funds that were meant for Constrafor. ¶ 25. On March 12, 2023, Signature Bank, suffering financial instability, was placed under Federal Deposit Insurance Corporation ("FDIC") receivership, and the FDIC took control of Signature Bank's assets and liabilities. ¶¶ 27–28.

In attempts to secure the return of its funds, Plaintiff submitted claims to the FDIC seeking the return of $2,284,334.15 plus interest around July 23, 2022, and again on October 7, 2022. ¶¶ 29, 34–35. Despite Plaintiff's demands, the FDIC would not return any funds to Plaintiff. ¶¶ 30, 36. Following the appointment of the FDIC as receiver for Signature Bank, Plaintiff also submitted a claim against the receivership to recover the Subject Funds. ¶ 37. Thereafter, as the parties agree, "[s]ubstantially all of the assets of Signature [Bank] were eventually purchased by, and the deposits were assumed by, Flagstar Bank, N.A. ("Flagstar")." ECF No. 12 at 6; ECF No. 29-5 at 8. On April 12, 2024, Plaintiff was notified that the FDIC disallowed its claim to the Subject Funds, asserting that Plaintiff's claim was a "general unsecured claim." ¶ 37.

## PROCEDURAL HISTORY

On June 8, 2024, Constrafor filed this action against the FDIC, as Receiver for Signature Bank. ECF No. 1. Defendant FDIC moved to dismiss the Complaint on October 23, 2024. ECF Nos. 11, 12 ("MTD Mem."). The following week, Defendant filed a motion to stay discovery pending the Court's decision on the motion to dismiss, which Plaintiff opposed on October 31, 2024. ECF Nos. 14, 16. Based on the parties' submissions, on November 25, 2024, the Court stayed discovery until resolution of Defendant's motion to dismiss. ECF No. 19.

On December 3, 2024, Plaintiff filed its opposition to Defendant's motion to dismiss and Defendant replied on December 20, 2024. ECF Nos. 22 ("MTD Opp."), 23. Nearly two months later, on February 12, 2025, Plaintiff sought the Court's instruction regarding amending its Complaint to add Flagstar Bank, N.A. ("Flagstar") as a defendant. ECF No. 24. On February 13, 2025, the Court ordered Defendant to respond to Plaintiff's request, ECF No. 25, and the following day, Defendant filed a letter stating it took "no position on what procedure Plaintiff pursues in seeking to assert claims against Flagstar." ECF No. 26. Accordingly, the Court granted Plaintiff leave to file a motion seeking leave to amend its Complaint. ECF No. 27.

On February 28, 2025, Plaintiff filed its motion for leave to amend its complaint along with a proposed Amended Complaint ("PAC"). ECF No. 29. Defendants filed their opposition on March 14, 2025, and Plaintiff replied on March 21, 2025. ECF Nos. 30, 32. On June 3, 2025, Plaintiff informed the Court that if their motion to amend remained undecided by June 9, 2025, Plaintiff would need to file a separate related action against Flagstar to preserve claims within the statutory period, which Plaintiff could later discontinue or consolidate upon the Court's determination of their motion to amend the Complaint. ECF No. 33. On June 5, 2025, the Court permitted Plaintiff to file a separate action against Flagstar because it would not rule on the

parties' pending motions before June 9, 2025. ECF No. 34. Plaintiff filed that separate action against Flagstar. *See Constrafor Inc. v. Flagstar Bank, N.A.*, No. 25-CV-4961 (JGLC), ECF No. 3 (S.D.N.Y. 2025).

## LEGAL STANDARD

### I. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted). A claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. If a complaint does not state a plausible claim for relief, it must be dismissed. *Id.* at 679.

### II. Leave to Amend

Whether to grant or deny leave to amend is "within the sound discretion of the trial court" and leave to amend shall be freely granted "when justice so requires." *Bay Harbour Mgmt., LLC v. Carothers*, 474 F. Supp. 2d 501, 502 (S.D.N.Y. 2007) (citing *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990)); Fed. R. Civ. P. 15(a)(2). "Amendments are generally

favored because they tend to facilitate a proper decision on the merits." *Env't Sols. Assocs. Grp., LLC v. Conopoco, Inc.*, No. 20-CV-10699 (MKV), 2021 WL 2075586, at *1 (S.D.N.Y. May 24, 2021) (citation and internal quotation marks omitted). The Supreme Court has instructed, however, that leave should be denied upon a showing of "futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012) (internal citation omitted).

## DISCUSSION

The Court first considers Plaintiff's claims for both money had and received and conversion. With respect to the Leeding Deposit, the Court finds that both claims fail as a matter of law. With respect to the Lions Group Funds, the Court finds that Plaintiff's claim for conversion survives, but because Plaintiff fails to sufficiently allege that Defendant benefitted from the Lions Group Funds, the claim for money had and received fails. The Court next addresses Defendant's claims regarding Signature Bank's security interest and concludes that because the claims would require the Court to analyze documents extraneous to the pleadings, any decision on these claims must be reserved until summary judgment. Lastly, the Court considers Plaintiff's application to amend its Complaint, and finds that adding Flagstar would be futile because the proposed Amended Complaint fails to sufficiently allege the required elements of conversion as to Flagstar.

## I. Plaintiff's Claims for Money Had and Received and Conversion

Plaintiff asserts claims for money had and received and conversion related to the bank's refusal to remit the Leeding Deposit and the Lions Group Funds. Under New York law, "[a] money had and received claim is essentially identical to an unjust enrichment claim and requires allegations that (1) defendant received money belonging to plaintiff; (2) defendant benefitted from the receipt of money; and (3) under principles of equity and good conscience, defendant should not be permitted to keep the money." *Rynasko v. New York Univ.*, 63 F.4th 186, 201 (2d Cir. 2023) (internal citation and quotation marks omitted). "[B]road considerations of right, justice and morality apply" to a money had and received claim, *Parsa v. State*, 64 N.Y.2d 143, 148 (1984), and "the essence of a mistaken payment/money had and received action is that while the plaintiff has made a mistake, the defendant will not be allowed to profit unjustly as a result." *Manufacturers Hanover Tr. Co. v. Chem. Bank*, 559 N.Y.S.2d 704, 708 (1st Dep't 1990) (internal citation and quotation marks omitted).

For a conversion claim, "a plaintiff must allege: '(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights.'" *Kirschner v. Bennett*, 648 F. Supp. 2d 525, 540 (S.D.N.Y. 2009) (quoting *Moses v. Martin*, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004)). As explained below, only Plaintiff's claim for conversion related to the Lions Group Fund survives.

### A. Plaintiff's Claims Regarding the Leeding Deposit

Plaintiff's claims for money and had received and conversion with respect to the Leeding Deposit both fail for a similar reason—namely, the SRPA effectively precludes both claims. "A

cause of action for money had and received is one of quasi-contract, and the existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Melcher v. Apollo Med. Fund Mgmt. L.L.C.*, 959 N.Y.S.2d 133, 142 (1st Dep't 2013) (cleaned up). That is true "even if, as here, one of the parties to the claim is not a party to the contract." *Taylor v. New York Life Ins. Co.*, No. 19-CV-6830 (VM), 2021 WL 467127, at *6 (S.D.N.Y. Feb. 9, 2021) (internal citation omitted); *see also Vitale v. Steinberg*, 764 N.Y.S.2d 236, 239 (1st Dep't 2003); *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 203 (S.D.N.Y. 2011) (quoting *Network Enters., Inc. v. Reality Racing, Inc.*, No. 09-CV-4664 (RJS), 2010 WL 3529237, at *7 (S.D.N.Y. Aug. 24, 2010)) ("[T]he existence of a valid and binding contract governing the subject matter at issue in a particular case *does* act to preclude a claim for [money had and received] even against a third party non-signatory to the agreement.").

    Here, neither party contests that the SRPA is a valid contract between STNY and Constrafor. *See* MTD Mem. at 7; MTD Opp. at 5. The SRPA requires STNY to hold payments received from account debtors in trust for Constrafor and to remit those payments within two days of receipt. ¶ 13. The SRPA also designates STNY as Plaintiff's attorney-in-fact to demand, take, collect, sue for, and receive all payments made concerning the purchased receivables. ¶ 12. As alleged in the Complaint, the payment of the Leeding Deposit "should have been remitted [to Plaintiff] according to the terms of the SRPA." ¶ 14. In other words, Plaintiff's demand for $523,012.71, which is currently held in STNY's account, is the same subject matter as the SRPA. ¶ 10 ("The $523,012.71 payment to STNY was made pursuant to an invoice that STNY had issued and sold to Constrafor under the SRPA."). As such, the SRPA precludes this claim,

and Plaintiff's relief for not receiving the funds owed under the SRPA is against STNY under the contract.

Plaintiff also fails to state a cognizable claim for conversion with respect to the Leeding Deposit. "New York law recognizes an action for conversion of money, but requires the plaintiff to have 'ownership, possession or control of the money' before its conversion." *Traffix, Inc. v. Herold*, 269 F. Supp. 2d 223, 228 (S.D.N.Y. 2003) (quoting *Aramony v. United Way of America,* 949 F. Supp. 1080, 1086 (S.D.N.Y. 1996)). Here, Plaintiff never alleges it had ownership, possession, or control of the Leeding Deposit. It only alleges that it had a right to receive the Leeding Deposit under the SRPA. This is insufficient. *See Heap v. CenturyLink, Inc.*, No. 18 CV-1220 (LAP), 2020 WL 1489801, at *18 (S.D.N.Y. Mar. 27, 2020) (finding that plaintiff's conversion claim failed as a matter of law because "[a]n obligation to be paid does not equate to a plaintiff's ownership, possession or control of the money in question."). As New York courts consistently recognize, "while [Plaintiff] may have had a contractual right thereto, the mere right to payment cannot be the basis for a cause of action alleging conversion[.]" *Black v. Phoenix Cayman Ltd.*, 226 N.Y.S.3d 183, 188 (1st Dep't 2025) (internal citation omitted); *see also DDR Const. Servs., Inc. v. Siemens Indus., Inc.*, 770 F. Supp. 2d 627, 661 (S.D.N.Y. 2011) (dismissing a conversion claim where, despite a potential contractual right to profits, plaintiff never had "control or possession" of the funds); *Castaldi v. 39 Winfield Assocs.*, 820 N.Y.S.2d 279, 280 (2006) (reversing denial of dismissal of a conversion claim because despite an alleged contractual right to payment, plaintiff never had "ownership, possession, or control" of the funds). Without plausible allegations of ownership, possession or control of the Leeding Deposit, Plaintiff's conversion claim necessarily fails. Accordingly, Plaintiff's claims for money had and received and conversion with respect to the Leeding Deposit are DISMISSED.

### B. Plaintiff's Conversion Claim for the Lions Group Funds Survives

Unlike Plaintiff's conversion claim related to the Leeding Deposit, Plaintiff has stated a viable claim for conversion based on the Lions Group Funds. Plaintiff has plausibly alleged each element of this claim.

First, the Lions Group Funds, as alleged, are specific and identifiable. In New York, "[f]unds may be 'specifically identifiable' despite the fact that they are not alleged to be held in a segregated account." *Kirschner*, 648 F. Supp. 2d at 542 (citing *LoPresti v. Terwilliger*, 126 F.3d 34, 42 (2d Cir. 1997)). For example, when a complaint alleges, as it does here, that an identifiable sum of money sent was via wire, those funds are specifically identifiable. *See ADP Inv. Commc'n Servs., Inc. v. In House Att'y Servs., Inc.*, 390 F. Supp. 2d 212, 225 (E.D.N.Y. 2005) (finding that allegations of a specific sum of money sent by wire transfer from the plaintiff's identified bank account to the defendant were sufficient to state a claim for conversion). Indeed, "analysis of whether the funds [a]re 'specifically identifiable' [does] not turn on the nature of the account that received the funds (i.e., segregated or unsegregated), but instead on whether the money at issue was a specific sum." *Fam. Health Mgmt., LLC v. Rohan Devs., LLC*, 171 N.Y.S.3d 44, 48–52 (1st Dep't 2022) ("Conversion will lie, where, as here, there is a specific sum of money . . . ."). Here, the Lions Group Funds were transferred by wire to STNY at Signature Bank in identifiable sums. ¶¶ 17, 21. Specifically, two separate wires of $880,660.72 each, totaling $1,761,321.44, were sent to STNY at Signature Bank. *Id.* These wires are specific and identifiable, and as such, they sufficiently allege the first element of conversion.

Defendant relies on *Fundacion Museo de Arte Contemporaneo de Caracas v. CBI-TDB Union Bancaire Privee*, 160 F.3d 146 (2d Cir. 1998) to argue that Plaintiff cannot meet this element. Although the Court there held that "funds deposited in a bank account are not

sufficiently specific and identifiable, in relation to the bank's other funds," the Court reached this conclusion based on distinguishable facts. *Id.* at 148. There, the plaintiff, a museum, was swindled out of money by a bad actor who forged the museum director's signature on a check to himself. *Id.* at 147–48. The swindler asked his bank to deposit the forged check and to transfer the bulk of the proceeds to accounts at different banks. *Id.* The museum sued the swindler's bank who deposited the check. *Id.* But at that point the money had largely been transferred. *Id.* The Second Circuit upheld the dismissal of this conversion claim, concluding that the funds were not sufficiently specific and identifiable. *Id.* at 148. That is not the case here—where a specific and identifiable amount has been retained by Defendant, and where there is a dispute about who has a rightful claim to these funds.

Likewise, the case the Second Circuit relied on for the proposition stated in *Fundacion* involved distinguishable facts. *See Chemical Bank v. Ettinger*, 602 N.Y.S.2d 332, 336 (1st Dep't 1993). There, an account holder sued its own bank for conversion, which is not the case here. Furthermore, cases since both *Fundacion* and *Ettinger* have explained the rationale for this rule as follows:

> [F]unds deposited with a bank become an asset of the bank, and the bank, in turn, becomes indebted to the depositor. *See Feinberg v. Katz*, 2002 WL 1751135, *16–*17 (S.D.N.Y. July 26, 2002) (applying New York law). Ordinarily, when the bank has misused the depositor's money, the depositor's remedy lies in contract—not tort. *See Tevdorachvili v. Chase Manhattan Bank*, 103 F.Supp.2d 632, 643 (E.D.N.Y. 2000) (collecting cases applying New York law).

*Newbro v. Freed*, 409 F. Supp. 2d 386, 395–96 (S.D.N.Y. 2006), *aff'd*, No. 06-CV-1722, 2007 WL 642941 (2d Cir. Feb. 27, 2007). That rationale does not apply here—where Plaintiff is not the depositor that the bank is indebted to and Plaintiff has no remedy in contract against either Defendant or STNY for the funds at issue. As such, the Court concludes, at this juncture, that Plaintiff has plausibly alleged the first element of conversion.

Second, Plaintiff sufficiently alleges ownership, possession, or control over the Lions Group Funds before their conversion. *Kirschner*, 648 F. Supp. 2d at 540. Where a conversion claim is asserted with respect to money, "the plaintiff must demonstrate legal ownership or an immediate superior right of possession to a specific identifiable thing." *Bank Brussels Lambert v. Credit Lyonnais*, No. 93-CV-6876 (LMM), 2000 WL 174955, at *3 (S.D.N.Y. Feb. 15, 2000) (quoting *AMF Inc. v. Algo Distrib., Ltd.*, 369 N.Y.S.2d 460, 464 (2d Dep't 1975) (cleaned up). Defendant argues that Plaintiff lost title to the funds after they were wired to Signature Bank, and as such, no claim for conversion can lie. *See* MTD Mem. at 8–10. However, "conversion is concerned with the superior right of possession of such property, not title ownership." *Core Dev. Grp. LLC v. Spaho*, 157 N.Y.S.3d 416, 419 (1st Dep't 2021). As such, "[a] plaintiff need not show that he or she holds title to the property in question. He or she need only establish a possessory right or interest in the property . . . ." *Costoso v. Bank of Am., N.A.*, 74 F. Supp. 3d 558, 573 (E.D.N.Y. 2015) (cleaned up).

Here, Plaintiff has adequately alleged that Defendant received money belonging to Plaintiff in the form of the Lions Group Funds. As alleged, Plaintiff had clear ownership of the Lions Group Funds before they were wired to Signature Bank. *See* ¶¶ 16–22. Plaintiff mistakenly wired[2] the Lions Group Funds to STNY's account at Signature Bank, and despite attempts to

---

2 Plaintiff's opposition brief asserts that Signature Bank made misrepresentations to Plaintiff to induce Plaintiff to overpay Signature Bank. MTD Opp. at 11. The Court will not consider these arguments, which are not asserted in the Complaint. *See K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013) ("Plaintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss.").

return the funds to Plaintiff, Defendant has retained the funds. *Id.* Accordingly, Plaintiff has sufficiently pled that the Bank received money belonging to Plaintiff.

Third, Plaintiff sufficiently alleges that Defendant exercised an unauthorized dominion over the Lions Group Funds, to the exclusion of Plaintiff's rights. Plaintiff initiated the Lions Group Funds wires to STNY's bank account at Signature Bank. ¶¶ 17–21. Therefore, Defendant's possession of the Lions Group Funds was initially lawful. "When a defendant's possession of the property was initially lawful, there is no conversion unless the defendant refuses the owner's demand to return the property or wrongfully transfers or disposes of it before a demand is made." *Regions Bank v. Wieder & Mastroianni, P.C.*, 526 F. Supp. 2d 411, 414 (S.D.N.Y. 2007), *aff'd*, 268 F. App'x 17 (2d Cir. 2008); *Salatino v. Salatino*, 881 N.Y.S.2d 721, 723 (3d Dep't 2009) ("[W]here possession of property is initially lawful, conversion occurs when there is a refusal to return the property upon demand."). Plaintiff alleges that it made two such demands, first around July 23, 2022, and again on October 7, 2022. ¶¶ 34–35. Plaintiff further alleges that despite its demands, Defendant has refused to return the Lions Group Funds to Plaintiff. ¶ 36. Where a defendant refuses to return property after a demand, a claim for conversion lies. *See Lenard v. Design Studio*, 889 F. Supp. 2d 518, 531 (S.D.N.Y. 2012) (quoting *Schwartz v. Capital Liquidators, Inc.*, 984 F.2d 53, 53 (2d Cir.1993)). Accordingly, Plaintiff has sufficiently alleged each element of conversion with respect to the Lions Group Funds and Defendant's motion to dismiss the claim is DENIED.

### C. Plaintiff's Money Had and Received Claim Fails

Plaintiff's money had and received claim, however, fails as a matter of law. In particular, the claim fails because Plaintiff does not plausibly allege that Defendant benefitted from the receipt of money. A "money[] had and received [claim] require[s] allegations of fact showing

that the defendant benefitted at the improper expense of the plaintiff." *Patchen v. Gov't Emps. Ins. Co.*, 759 F. Supp. 2d 241, 250 (E.D.N.Y. 2011); *see Rynasko*, 63 F.4th at 201. Here, Plaintiff makes no allegation that Signature Bank was enriched or that it benefits from holding the Subject Funds. Instead, the Complaint merely asserts the conclusory allegation that the FDIC "has benefited from the wrongful retention and use of Constrafor's funds." ¶ 55; *see also* ¶ 58 ("FDIC reaps the benefit of funds that, in equity and good conscience, belong to Constrafor.").

Plaintiff's allegation that Defendants "received benefits, standing alone, is insufficient to establish a cause of action to recover damages" for a money had and received claim. *Old Republic Nat. Title Ins. Co. v. Cardinal Abstract Corp.*, 790 N.Y.S.2d 143, 145 (2005 2d Dep't). This is because "a benefit resulting in unjust enrichment arises, not only where the moneys of an outside third party add to the property of another, but also where the payment saves the other from expense or loss." *3105 Grand Corp. v. City of New York*, 288 N.Y. 178, 181 (1942); *see also Elec. Ins. Co. v. Travelers Ins. Co.*, 507 N.Y.S.2d 531, 532 (1986 3d Dep't) ("For the purposes of unjust enrichment, a person receives a benefit where his debt is satisfied or where he is saved an expense or loss.").

The allegations here are akin to those in *Curry Mgmt. Corp. v. JPMorgan Chase Bank N.A.*, 643 F. Supp. 3d 421, 430 (S.D.N.Y. 2022). There, the complaint included a conclusory assertion that the bank benefited from money belonging to defendant. The court concluded that the allegation was insufficient where, like here, the complaint failed to plead anything more to suggest that defendant received any benefit. Therefore, Defendant's motion to dismiss Plaintiff's money had and received claim with respect to the Lions Group Funds is GRANTED.

## II. The Court Declines to Determine Signature Bank's Security Interest

Defendant contends that if any claim survives, the Court should nonetheless dismiss this action. In particular, Defendant claims that Signature Bank has a right to set off amounts owed against the amounts on STNY's account, as well as a first priority perfected lien on STNY's deposit accounts. MTD Mem. at 12–13. Defendant also claims that this lien permitted Signature Bank to seize deposits owed to STNY in satisfaction of STNY's obligations to Signature Bank to the exclusion of other, subordinated creditors. *Id.*

Both of these claims would require the Court to consider materials that are extraneous to the pleadings. "[E]xtraneous materials do not become integral parts of the complaint unless the plaintiff relied on them in drafting the complaint." *Pearson v. Gesner*, 125 F.4th 400, 406 (2d Cir. 2025). There is no indication that Plaintiff relied on the additional documents Defendant adduces. As such, it would be inappropriate for the Court to consider these documents on a motion to dismiss. *See Friedl v. City of New York*, 210 F.3d 79, 83–84 (2d Cir. 2000) ("[A] district court errs when it considers affidavits and exhibits submitted by defendants, or relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss.") (cleaned up). Instead, to the extent these documents are relevant to Plaintiff's remaining claim, the Court will consider Defendant's position at summary judgment.

## III. Plaintiff's Motion to Amend the Complaint to Add Flagstar Is Denied

Plaintiff seeks to amend its Complaint to add Flagstar as a defendant in this action, based on Defendant's motion to dismiss which asserts that nearly all of Signature Bank's assets were purchased and/or assumed by Flagstar. ECF No. 29-5 at 8. Flagstar is also alleged to be the custodian of Signature Bank's records from prior to the bank's failure. *Id.* "[L]eave to amend a complaint to assert claims against additional defendants should be denied only because of undue delay, bad faith, futility, or prejudice to the non-moving party, and the decision to grant or deny a

motion to amend rests within the sound discretion of the district court." *Bernhard v. Cent. Parking Sys. of New York, Inc.*, 282 F.R.D. 284, 287 (E.D.N.Y. 2012) (internal citation and quotation marks omitted).

A proposed amendment is futile if the proposed claim could not withstand a Rule 12(b)(6) motion to dismiss. *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012). In making this determination, a court must consider the proposed amendments along with the rest of the complaint and "accept as true all non-conclusory factual allegations therein, and draw all reasonable inferences in plaintiff's favor to determine whether the allegations plausibly give rise to an entitlement to relief." *Id.*

Here, Plaintiff's PAC brings no new claims. *See* ECF No. 29-3. Instead, it merely adds Flagstar as a defendant and describes its relationship to Signature Bank and the FDIC. *See id.* Because the substance of the claims against Flagstar is substantially identical to the claims against Defendant, claims that fail against Defendant also fail against Flagstar. *See Cousar v. New York-Presbyterian Queens*, 845 F. App'x 34, 36 (2d Cir. 2021); *see also Abadi v. NYU Langone Health Sys*., 705 F. Supp. 3d 172, 186 (S.D.N.Y. 2023), *reconsideration denied,* 714 F. Supp. 3d 387 (S.D.N.Y. 2024) (denying plaintiff's request to file an amended complaint naming new defendants where proposed complaint did not demonstrate liability of proposed defendants). For that reason, amendment regarding the dismissed claims would be futile.

Amendment regarding the surviving conversion claim would also be futile. "Although plaintiffs who bring conversion claims against multiple defendants are not required to specify which defendant received, has possession of the funds, or has or had the power to return the funds, plaintiffs must show that each individual defendant played some role in the conversion." *Lawson v. Full Tilt Poker Ltd.*, 930 F. Supp. 2d 476, 487 (S.D.N.Y. 2013) (cleaned up). The

PAC fails to allege that Flagstar had any "intent to exercise dominion or control over property in a manner inconsistent with the rights of another." *Superb Motors Inc. v. Deo*, 776 F. Supp. 3d 21, 85 (E.D.N.Y. 2025) (internal citation omitted), *adhered to in part on reconsideration*, No. 23-CV-6188 (JMW), 2025 WL 2178194 (E.D.N.Y. Aug. 1, 2025). Indeed, there are no allegations explaining how Flagstar was involved in the alleged conversion other than its receipt of the alleged converted funds. Additionally, there is no allegation that Plaintiff demanded that Flagstar return its money or that Flagstar otherwise knows that it wrongfully possesses Plaintiffs money. This is insufficient. *See Schottenstein v. Lee,* No. 22-CV-1197 (DLC), 2023 WL 4363002, at *3 (S.D.N.Y. July 6, 2023) (dismissing a conversion claim where there were no facts suggesting that defendant was involved in the underlying conversion other than its control of an account that received stole funds, and where there was no allegation that plaintiff made a demand for the return of money or that defendant knew it wrongly retained plaintiffs property); *see also Superb Motors Inc.* 776 F. Supp. 3d at 87 (similar).

Furthermore, Defendant attests that Flagstar has not assumed liability for this action and that it remains with Defendant. Defendant points to a Purchase and Assumption Agreement ("PAA") between Flagstar, FDIC, as Receiver of Signature Bridge Bank, and FDIC. Amend. Mem at 10, 11. Because a motion to amend is considered under the same standard as a motion to dismiss, the Court may consider the PAA, which was incorporated by reference into the PAC. *See Arnold v. Rsch. Found. for State Univ. of New York*, 216 F. Supp. 3d 275, 284 (E.D.N.Y. 2016); PAC ¶ 40 ("FDIC entered into a purchase and assumption agreement (the 'Purchase and Assumption Agreement') for substantially all deposits and certain loan portfolios of Signature Bridge Bank, National Association, by Flagstar."). The PAA specifies that Flagstar only assumed certain enumerated liabilities of Signature Bank. *See* ECF No. 31-1 §§ 2.1–2.2; ECF No. 30 at 2.

Plaintiff fails to point to any provision in the PAA to the contrary. As such, Plaintiff's motion for leave to amend to add Flagstar as a Defendant is DENIED with respect to Plaintiff's remaining conversion claim.

**CONCLUSION**

For the reasons stated herein, Defendant's motion to dismiss is GRANTED in part and DENIED in part, and Plaintiff's motion for leave to amend is DENIED. All parties shall appear for an initial pretrial conference with the Court on **October 7, 2025** at **3:00 p.m.** The conference will be held remotely by Microsoft Teams. Counsel will receive Microsoft Teams log-in credentials at the email addresses listed on the docket. The public listen-only line may be accessed by dialing: 646-453-4442 | Access Code: 366427197#. The parties shall also file on ECF a joint letter, as described at ECF No. 4, as well as a proposed Civil Case Management Plan and Scheduling Order attached as an exhibit to the joint letter, by no later than **September 30, 2025**. The Clerk of Court is respectfully directed to terminate ECF Nos. 11 and 29.

Dated: September 12, 2025
New York, New York

SO ORDERED.

Jessica Clarke

JESSICA G. L. CLARKE
United States District Judge